**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| ANTONIO WRIGHT,<br>　　　Petitioner, | Case No. 1:12-cv-121 |
| vs. | Dlott, J.<br>Wehrman, M.J. |
| WARDEN, LEBANON<br>CORRECTIONAL INSTITUTION,<br>　　　Respondent. | **REPORT AND**<br>**RECOMMENDATION** |

Petitioner, an inmate in state custody at the Lebanon Correctional Institution in Lebanon, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition; respondent's return of writ with exhibits; petitioner's reply to the return of writ; and the transcript, which was filed by respondent on May 23, 2013 in accordance with an Order issued May 15, 2013, of the plea and sentencing hearings that were held in the state criminal matter. (Docs. 1, 5, 9, 12; *see also* Doc. 10).

**I. PROCEDURAL HISTORY**

**State Trial Proceedings**

On July 17, 2009, the Hamilton County, Ohio, grand jury returned a nine-count indictment against petitioner arising from a shooting incident on July 4, 2009 involving two victims, Jerome Burke and Melvin Dews, which resulted in the death of Burke. (*See* Doc. 5, Ex. 1). Specifically, the indictment charged petitioner with two counts of murder in violation of Ohio Rev. Code § 2903.02, with firearm specifications, stemming from conduct that resulted in the death of Burke (Counts 1-2); one count of attempted murder in violation of Ohio Rev. Code § 2923.02, with firearm specifications, based on the allegation that petitioner "purposely engaged in conduct which, if successful, would have constituted or resulted in the offense of MURDER" of Dews (Count 3); two counts of felonious assault in violation of Ohio Rev. Code § 2903.11(A),

with firearm specifications, based on conduct against Burke (Counts 4-5); one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A), with firearm specifications, based on conduct against Dews (Count 6); two counts of having weapons while under disability in violation of Ohio Rev. Code § 2923.13(A) (Counts 7-8); and one count of carrying concealed weapons in violation of Ohio Rev. Code § 2923.12(A)(2) (Count 9). (*Id.*).

On March 15, 2010, petitioner entered a guilty plea to a reduced charge in Count 1 of involuntary manslaughter in violation of Ohio Rev. Code § 2903.04(A) and the three-year firearm specification attached to that count, as well as to the felonious assault offense charged in Count 4. (*See id.*, Ex. 4). It appears from the record that although Count 4 of the indictment charged petitioner with the felonious assault of Burke, the plea bargain included an agreement to amend that count to change the name of the victim to Dews. (*See* Doc. 12, Tr. 51). It also appears from the record that the plea bargain included an agreement between the parties that petitioner would receive a prison sentence of 18 years, "although there was a possibility that the investigating officer might request a possible reduction to a total of 15 years." (*See* Doc. 5, Ex. 10, p. 1; *see also* Doc. 12, Tr. 48-49). The remaining counts and specifications were dismissed by the State. (Doc. 5, Ex. 5; *see also* Doc. 12, Tr. 48).

After a sentencing hearing, the trial court issued a Judgment Entry on April 30, 2010, sentencing petitioner to an aggregate prison term of seventeen (17) years, which consisted of the following consecutive terms of imprisonment: nine (9) years for the involuntary manslaughter offense involving the victim Burke; three (3) years on the firearm specification attached to the involuntary manslaughter charge; and five (5) years for the felonious assault offense charged in Count 4 as amended to name Dews as the victim. (Doc. 5, Ex. 6; *see also* Doc. 12, Tr. 78).

### State Appeal Proceedings

On June 9, 2010, petitioner filed a *pro se* notice of appeal and motion for leave to file a

delayed appeal to the Ohio Court of Appeals, First Appellate District. (Doc. 5, Exs. 7-8). The Ohio Court of Appeals granted petitioner leave to appeal and appointed counsel to represent him on appeal. (*Id.*, Ex. 9).

Petitioner's appointed counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), stating that she had "conscientiously examined the entire record for errors" in the case involving "a plea agreement and agreed sentence, and based upon R.C. Section 2953.08, [could] find no errors." (*Id.*, Ex. 10). Counsel also stated that she had contacted petitioner to let him know that she was filing an *Anders* brief and enclosed letters from petitioner "outlining what errors he believed occurred." (*Id.*). In one of the attached letters dated July 24, 2010, petitioner stated:

> I know that since I took a plea, most of my arguments would be waived, but I still feel that the issue of the imposition of consecutive sentences should have been objected to by my attorney at sentencing.
>
> Therefore, I feel that this issue should be raised on my direct-appeal, seeing the jury is still out on how the Ohio Supreme Court will resolve the impact of Oreg[o]n v. Ice on Ohio'[s] imposition of consecutive sentencing.

(*See id.*). In a second letter dated August 4, 2010, petitioner further requested that the following issues be argued on appeal:

1. The consecutive sentence that was imposed on a[n] allied offense.

2. There was an error by my attorney so therefor[e] it is an ineffective counsel issue thereto.

3. I was charged with a[] Felonious Assault charge on a guy name[d] Melvin Dews which the guy was never harmed in any way so therefor[e] it can't be a Felonious Assault charge.

(*See id.*). Petitioner also contended in the second letter that "[t]here was no evidence at all" against him, and that he had entered the guilty plea "because I know the system do[es]n't care if I'm guilty or not, to them I'm guilty so I was not willing to risk my life like that when I was already in a lo[]sing position." (*See id.*).

3

On February 11, 2011, the Ohio Court of Appeals issued a Judgment Entry affirming the trial court's judgment. (*Id.*, Ex. 12). The court reasoned in pertinent part:

> As part of a plea agreement, defendant-appellant . . . pleaded guilty to one count of involuntary manslaughter under R.C. 2903.04(A) and one count of felonious assault under R.C. 2903.11(A)(1), with accompanying firearm specifications. Both counts involve different victims. As part of an agreed sentence, the trial court sentenced Wright to serve a total of 17 years' incarceration.
>
> As provided in *Anders v. California*, Wright's appointed counsel has advised this court that, after a thorough review of the record, she can discern no arguable assignments of error to present on appeal. She has advised Wright of this determination, and Wright has set forth some possible errors in the proceedings below. Wright's counsel now asks this court to conduct an independent review of the record to determine whether the proceedings below were free from prejudicial error. She has also filed a motion to withdraw as Wright's counsel.
>
> After reviewing the entire record, we are satisfied that Wright's counsel has provided her client with a diligent and thorough search of the record, and that she has correctly concluded that the proceedings below were free of prejudicial error. Therefore, we affirm the trial court's judgment and overrule counsel's motion to withdraw.

(*Id.*).

Petitioner pursued a timely *pro se* appeal to the Ohio Supreme Court from the appellate court's decision. (*See id.*, Ex. 13). In his memorandum in support of jurisdiction, petitioner presented the following propositions of law:

1. Defendant-Appellant asserts that the imposition of consecutive sentences for involuntary manslaughter reduced charges of murder . . . and felonious assault . . . constitutes multiple punishment for but one offense. . . .

2. The trial Court erred when it imposed consecutive sentences in this case in violation of Mr. Wright's constitutional rights pursuant to the Sixth Amendment.

(*Id.*, Ex. 14).

On May 25, 2011, the Ohio Supreme Court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.*, Ex. 16).

4

**Federal Habeas Corpus**

Petitioner next commenced the instant habeas corpus action on February 10, 2012. (*See* Doc. 1, p. 13). In his petition, petitioner asserts three grounds for relief:

> **Ground One:**  Trial counsel was ineffective for failing to object to the imposition of consecutive sentences.
>
> **Ground Two:**  Trial court erred by imposing consecutive sentences for offenses that were allied.
>
> **Ground Three:**  Evidence was insufficient to support a conviction of felonious assault.

(*Id.*, pp. 5, 7, 8).

In the return of writ filed in response to the petition, respondent contends in part that petitioner procedurally defaulted his claims in the state courts and, therefore, has waived each ground for relief. (Doc. 5, Brief, pp. 12-16). Petitioner has filed a "traverse" brief in reply to the return of writ, in which he disputes respondent's position. (*See* Doc. 9, pp. 2-3).

## II. OPINION

### A. Petitioner Has Waived The Claims Alleged In Grounds One And Three Of The Petition By Failing To Raise Them On Appeal To The Ohio Supreme Court

In Grounds One and Three of the petition, petitioner raises claims challenging the effectiveness of his trial counsel and the sufficiency of the evidence, which he asserted as issues to be considered on direct appeal in the letters attached to the *Anders* brief filed by his appellate counsel with the Ohio Court of Appeals. (*See* Doc. 1, pp. 5, 8; Doc. 5, Ex. 10). Respondent contends in the return of writ that petitioner has waived the two grounds for relief because he failed to assert them as propositions of law on further appeal to the Ohio Supreme Court. (Doc. 5, Brief, p. 12). Respondent's argument has merit.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal

5

courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

If it is determined that the petitioner procedurally defaulted his claims in the state courts, federal habeas review is precluded unless the petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the defaulted claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Harris,* 489 U.S. at 262; *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

Here, as respondent has argued, petitioner did not satisfy the fair presentation requirement. Although petitioner raised the claims in the direct appeal proceedings before the Ohio Court of Appeals, he committed a procedural default because he failed to re-assert them as propositions of law on further appeal to the Ohio Supreme Court. (*See* Doc. 5, Exs. 10, 14).

Petitioner has contended in his "traverse" brief in reply to the return of writ that he did present the same issues to the Ohio Supreme Court that had been raised by him in his letters to the Ohio Court of Appeals. (Doc. 9, p. 3). However, the record belies that contention. As respondent pointed out in the return of writ (*see* Doc. 5, Brief, p. 12), petitioner only claimed on appeal to the Ohio Supreme Court that the trial court erred in imposing consecutive sentences. (*See* Doc. 5, Ex. 14). He did not assert any argument challenging the sufficiency of the evidence or the effectiveness of his trial counsel in failing to object to the consecutive sentences. Because petitioner thus failed to present the state's highest court with an opportunity to correct the errors alleged in Grounds One and Three of the petition, he has waived the claims unless he demonstrates cause for and prejudice from his procedural default or that failure to consider the claims will result in a "fundamental miscarriage of justice." *See, e.g., Coleman,* 501 U.S. at 750; *Murray,* 477 U.S. at 485.

Petitioner has not provided any justification for his failure to present the claims alleged in Grounds One and Three to the Ohio Supreme Court. Therefore, he has not demonstrated cause for his procedural default in the state courts.

In addition, petitioner has not shown that failure to consider the defaulted claims will result in a "fundamental miscarriage of justice," or in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995). Although petitioner has challenged the sufficiency of evidence supporting his convictions, actual innocence means factual innocence, not mere legal insufficiency. *See House v. Bell,* 547 U.S. 518, 538 (2006); *Carter v. Mitchell,* 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley v. United States,* 523 U.S. 614, 623 (1998)); *Wright v. Lazaroff,* 643 F. Supp.2d 971, 989 (S.D. Ohio 2009) (Barrett, J.; Hogan, M.J.); *see also Vanwinkle v. United States,* 645 F.3d 365, 369 (6th Cir. 2011).

To establish a credible claim of actual innocence sufficient to overcome a procedural bar to review, the petitioner must demonstrate that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'" *House,* 547 U.S. at 536-37 (quoting *Schlup*, 513 U.S. at 327); *see also McQuiggin v. Perkins,* __ U.S. __, 133 S.Ct. 1924, 1928 (2013) (quoting *Schlup*, 513 U.S. at 529). The standard is "demanding and permits review only in the 'extraordinary' case." *House,* 547 U.S. at 538 (quoting *Schlup,* 513 U.S. at 327); *see also McQuiggin*, 133 S.Ct. at 1928 ("tenable actual-innocence gateway pleas are rare"). To be credible, a claim of actual innocence must be based on "new reliable evidence . . . that was not presented at trial." *House,* 547 U.S. at 537 (quoting *Schlup*, 513 U.S. at 324); *see also Calderon v. Thompson,* 523 U.S. 538, 559 (1998). Here, to the extent that conclusory allegations contained in petitioner's letters filed on direct appeal may be construed as a claim of actual innocence, petitioner has failed to provide any evidence, much less "new reliable evidence," to substantiate his assertions. Therefore, he has not demonstrated that the actual innocence exception applies to overcome the procedural default bar to review in this case.

Accordingly, in sum, the undersigned concludes that petitioner has waived the claims alleged in Grounds One and Three of the petition due to his procedural default in failing to raise them to the Ohio Supreme Court. In the absence of a showing of cause for his default or that a fundamental miscarriage of justice will occur if the defaulted claims are not considered herein, Grounds One and Three of the petition are subject to dismissal with prejudice because they are procedurally barred from review in this federal habeas proceeding.

**B.   Petitioner Is Not Entitled To Relief Based On The Claim Alleged In Ground Two That He Should Not Have Been Sentenced Consecutively for Allied Offenses**

In Ground Two of the petition, petitioner alleges, as he claimed on appeal to both the Ohio Court of Appeals and Ohio Supreme Court, that he was improperly sentenced to consecutive terms of imprisonment for allied offenses of similar import in violation of Ohio Rev.

Code § 2941.25. (*See* Doc. 1, p. 7; *see also* Doc. 5, Exs. 10, 14).

As a threshold matter, although it appears at first blush that, as a matter of state law, petitioner waived any right to appeal his sentence, which was jointly agreed to as part of the parties' plea bargain, *see* Ohio Rev. Code § 2953.08(D)(1), the Ohio Supreme Court has held that an appeal of an agreed sentence is not barred in cases where the defendant contends that he was improperly convicted and sentenced for allied offenses of similar import. *See State v. Underwood*, 922 N.E.2d 923, 929-30 (Ohio 2010). This federal habeas Court, however, has jurisdiction to review petitioner's claim only to the extent that petitioner challenges his confinement based on an alleged violation of the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Wilson v. Corcoran,* __ U.S. __, 131 S.Ct. 13, 16 (2010) (quoting *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"). Because habeas review is limited to claims implicating federal concerns, this Court lacks jurisdiction to consider any claim by petitioner that the trial court erred under the state allied offense statute in imposing consecutive sentences in this case. On the other hand, petitioner has alleged a cognizable constitutional claim subject to review by this Court to the extent he contends that he was multiply punished for the same offense in violation of the Fifth Amendment's Double Jeopardy Clause.[1]

---

[1] Respondent has contended in the return of writ that petitioner has waived the federal claim because he only argued a violation of Ohio Rev. Code § 2941.25 on appeal in the state courts. (*See* Doc. 5, Brief, pp. 12-14). Although the Sixth Circuit has not issued a definitive ruling on the issue, district courts in Ohio have held that the federal claim is not waived because the state statutory provision is grounded in double-jeopardy concerns, and therefore, a claim that multiple sentences were imposed in violation of Ohio Rev. Code § 2941.25 places the state courts on notice that there is a federal constitutional dimension to the claim. *See, e.g.*, **Error! Main Document Only.***Palmer v. Haviland,* No. C-1-04-28, 2006 WL 1308219, at *4-5 (S.D. Ohio May 11, 2006) (Weber, J.), *aff'd,* 273 F. App'x 480 (6th Cir. 2008); *see also Render v. Warden, Southern Ohio Corr. Facility,* 889 F. Supp.2d 1014,1023-24, 1044-48 (S.D. Ohio 2012) (Spiegel, J.; Bowman, M.J.) (and numerous district court decisions cited therein). *But cf. Smith v. Warden, Southern Ohio Corr. Facility,* No. 3:13cv65, 2013 WL 1165149, at *8 (S.D. Ohio Mar. 20, 2013) (Merz, M.J.) (Report & Recommendation), *adopted*, 2013 WL 2147972 (S.D. Ohio May 16, 2013)

In this federal habeas case, the applicable standard of review governing the adjudication of constitutional issues raised by plaintiff to the state courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)), *cert. denied*, 132 S.Ct. 1743 (2012). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that

---

(Rose, J.). Given these precedents, the undersigned has elected to address the federal issue in this case.

10

> the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court recently extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, __ U.S. __, 133 S.Ct. 1088, 1091 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44-45 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases

11

already decided at the time the state court made its decision"). In *Greene*, 132 U.S. at 44, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. __, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'" Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied,* 132 S.Ct. 127 (2011)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

The Double Jeopardy Clause protects against "multiple punishments for the same offense" imposed in a single proceeding. *Missouri v. Hunter,* 459 U.S. 359, 366 (1983) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969)). The protection is limited to ensuring that "sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." *Jones v. Thomas,* 491 U.S. 376, 381 (1989); *see also Ohio v. Johnson,* 467 U.S. 493, 499 (1984); *Brown v. Ohio,* 432 U.S. 161, 165 (1977). Therefore, "the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Johnson,* 467 U.S. at 499; *see also Palmer v. Haviland,* 273 F. App'x 480,

484 (6th Cir. 2008) (unlike other double jeopardy protections prohibiting re-prosecution for the same offense, "the multiple punishments category of double jeopardy is primarily one of legislative intent").

In the federal courts, the test established in *Blockburger v. United States,* 284 U.S. 299, 304 (1932), is normally used to determine whether two offenses are sufficiently different to allow the imposition of cumulative punishment. *Johnson,* 467 U.S. at 499 n.8; *see also Brown,* 432 U.S. at 166. However, the *Blockburger* test, a rule of statutory construction for federal statutes, does not necessarily control the inquiry into the intent of a state legislature. *Johnson,* 467 U.S. at 499 n.8; *see also Volpe v. Trim*, 708 F.3d 688, 696 (6th Cir. 2013); *Banner v. Davis,* 886 F.2d 777, 780-82 (6th Cir. 1989). Instead, when assessing the intent of a state legislature, the federal courts must defer to and are bound by the state courts' construction of their own statutes. *Hunter,* 459 U.S. at 368 (citing *O'Brien v. Skinner,* 414 U.S. 524, 531 (1974)); *see also Johnson,* 467 U.S. at 499; *Brown,* 432 U.S. at 167; *Volpe*, 708 F.3d at 697 (and cases cited therein); *Banner,* 886 F.2d at 780. *Accord Palmer,* 273 F. App'x at 486 (on federal habeas review, "[w]e cannot independently apply typical rules of statutory construction, including the *Blockburger* test, to a state statute and conclude that the state courts were wrong in their reading of legislative intent"). A state legislature may create substantive crimes and punishments that overlap to some degree without violating the Double Jeopardy Clause. Therefore, "[e]ven if the crimes are the same under *Blockburger,* if it is evident that a state legislature intended to authorize cumulative punishments [for them, the federal] court's inquiry is at an end." *Volpe*, 708 F.3d at 696-97 (quoting *Johnson,* 467 U.S. at 499 n.8).

In Ohio, the legislature's intent in the multiple punishment area may be discerned from Ohio Rev. Code § 2941.25, which was enacted "to prevent 'shotgun' convictions" or, in other words, "multiple findings of guilt and corresponding punishments . . . for closely related offenses

13

arising from the same occurrence." *See State v. Johnson*, 942 N.E.2d 1061, 1064-65 & n.2, 1069 (Ohio 2010) (citing *State v. Botta*, 271 N.E.2d 776 (Ohio 1971), and *State v. Logan*, 397 N.E.2d 1345 (Ohio 1979), and quoting Legislative Service Commission comments to § 2941.25); *see also Volpe,* 708 F.3d at 697. *Cf. State v. Brown*, 895 N.E.2d 149, 153 (Ohio 2008) (pointing out that the standards set forth in Ohio's multiple-count statute "answered both the constitutional and state statutory inquiries regarding the General Assembly's intent to permit cumulative punishments for the same conduct"). The statute provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

Ohio Rev. Code § 2941.25. The statutory provision permits the trial court to convict and impose cumulative sentences for two or more offenses arising from the same incident if the offenses (1) are of dissimilar import; or (2) are of similar import, but were committed separately or with separate animus. *Brown*, 895 N.E.2d at 153.

In this case, it is petitioner's position that he was multiply punished for the same offense under Ohio's allied offense statute, because the offenses occurred during the course of a single incident in which petitioner's "mental intent was to sho[o]t Melvin Dews, not Jerome Burke." (*See* Doc. 5, Ex. 14; Doc. 9, p. 4). Petitioner's position is not well taken, because it is well-settled under Ohio Supreme Court precedents that a person may be multiply punished in Ohio for harm inflicted on separate victims during a single course of conduct. *See, e.g., State v. Jones*, 480 N.E.2d 408 (Ohio 1985) (affirming separate convictions and sentences for aggravated vehicular homicide in case involving two victims killed in a single incident of reckless operation

14

of a motor vehicle); *see also State v. Turner*, 826 N.E.2d 266, 279 n.2 (Ohio 2005) (noting that the trial court erred in merging two aggravated murder counts for purposes of sentencing because "the two counts involved different victims"); *State v. Franklin*, 776 N.E.2d 26, 40-41 (Ohio 2002) (rejecting the argument that six aggravated arson counts constituted allied offenses that should be merged into one because the defendant "set only one fire and thus committed only one arson," and holding instead by analogy to *Jones* that the defendant's "conduct caused six offenses of dissimilar import because six different people were placed at risk"). *Cf. Turner v. Warden, Noble Corr. Inst.*, No. 1:08cv309, 2009 WL 866841, at *1-3, *9-10 (S.D. Ohio Mar. 31, 2009) (Spiegel, J.; Black, M.J.) (holding in an analogous case that the habeas petitioner was "unable to prevail on his claim . . . challenging the imposition of consecutive sentences, which he in any event, had agreed could be imposed under the terms of the parties' plea agreement," because "three separate felonious assault offenses committed against three victims during one shooting incident . . . were not allied offenses of similar import" under Ohio law).

  This Court is bound by and must defer to the state courts' construction of the Ohio statute. *See Hunter,* 459 U.S. at 368; *see also Johnson,* 467 U.S. at 499; *Brown,* 432 U.S. at 167; *O'Brien,* 414 U.S. at 531; *Volpe*, 708 F.3d at 697 (and cases cited therein). Given the Ohio courts' interpretation of the state statute reflecting the Ohio legislature's intent in the multiple punishment area, it appears clear that the legislature intended to authorize cumulative punishments for offenses committed against separate victims during a single course of conduct. Therefore, this Court's inquiry is at an end. *See Johnson,* 467 U.S. at 499 n.8; *Volpe*, 708 F.3d at 696-97.

  Accordingly, in sum, the undersigned concludes that to the extent that petitioner alleges in Ground Two of the petition that the trial court violated Ohio's allied offense statute in imposing consecutive sentences in this case, his claim raises an issue of state-law only, which is

not cognizable in this habeas proceeding. In addition, petitioner has not demonstrated that he is entitled to habeas relief to the extent he claims that the imposition of consecutive sentences for offenses committed against both Burke and Dews during the course of the single shooting incident violates the Fifth Amendment's Double Jeopardy Clause. Petitioner has not shown that the state court's adjudication of the issue, based upon the finding that the trial proceedings "were free of prejudicial error" as argued by counsel in the *Anders* brief, was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Harrington*, 131 S.Ct. at 786-87. Therefore, petitioner's claim in Ground Two challenging his convictions and consecutive sentences for the involuntary manslaughter of Burke and felonious assault of Dews should be denied as lacking in merit.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in Grounds One and Three of the petition, which this Court has concluded are waived and thus procedurally barred from review, because under the first of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[2] A certificate of appealability also should not issue with respect to the non-defaulted claim alleged in Ground Two of the petition in the absence of a substantial showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further." *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463

---

[2]Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in either of the defaulted grounds for relief. *See Slack,* 529 U.S. at 484.

U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

     3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date:  6/19/2013                                  s/ J. Gregory Wehrman
                                                                    J. Gregory Wehrman
                                                                    United States Magistrate Judge

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ANTONIO WRIGHT,  
    Petitioner,

vs.

WARDEN, LEBANON  
CORRECTIONAL INSTITUTION,  
    Respondent.

Case No. 1:12-cv-121

Dlott, J.  
Wehrman, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc